AO 106 (REV 4/10) Affidavit for Search Warrant

AUSA Jordan M. Matthews, (312) 697-4090

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:

The Facebook account 100025555491352, further described in Attachment A

Case Number:

**18 M 602**

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Patrice Register, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

### See Attachment A

located in the Northern District of California, there is now concealed:

### See Attachment A, Part III

The basis for the search under Fed. R. Crim. P. 41(c) is evidence.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 922(g)(1) | possession of a firearm by a felon |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

_____
*Applicant's Signature*

PATRICE REGISTER, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 28, 2018

_____
*Judge's signature*

City and State: Chicago, Illinois

MARIA VALDEZ, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT )
                                                    )
NORTHERN DISTRICT OF ILLINOIS )

## AFFIDAVIT

I, Patrice Register, being duly sworn, state as follows:

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. I have been so employed for approximately a year and three months.

2.      As part of my duties as an ATF Special Agent, I investigate criminal violations relating to firearms trafficking and illegal firearms possession. I have participated in the execution of multiple federal search warrants.

3.      This affidavit is made in support of an application for a warrant to search, pursuant to Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), for information associated with a certain account that is stored at the premises owned, maintained, controlled, or operated by Facebook, a social network provider located at 1601 S. California Avenue, Palo Alto, California 94304. The account to be searched is 100025555491352 (hereinafter, **"Subject Account 1"**), which is further described in the following paragraphs and in Part II of Attachment A. As set forth below, there is probable cause to believe that in the account, described in Part II of Attachment A, in the possession of Facebook, there exists evidence of violations of Title 18, United States Code, Section 922(g)(1).

4.      The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being

submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence of violations of Title 18, United States Code, Section 922(g)(1), are located in the **Subject Account**.

## I. BACKGROUND INFORMATION

### A. Facebook

5.      Based on my training and experience, I have learned the following about Facebook:

a.      Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

b.      Facebook asks users to provide basic contact information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

2

c.       Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

d.       Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "Mini-Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

e.       Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the

3

event's time, location, host, and guest list. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

      f.    Facebook allows users to upload photos and videos. It also provides users the ability to "tag" (*i.e.*, label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them. Photos taken by a digital camera or smartphone typically include an Exchangeable Image File ("EXIF") data, which often includes the date, time, type of device, and geolocation for the photo. Facebook removes EXIF data from photos that are uploaded by users, but retains a copy of that information.

      g.    Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through

Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

      h.     If a Facebook user does not want to interact with another user, the first user can "block" the second user from seeing his or her Facebook account.

      i.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

      j.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

      k.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

      l.     A Facebook user may opt for "notifications" of many of the above listed events (e.g., receiving a message or a friend request) to be sent to an email address associated with the user's Facebook account.

m.   Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

n.   The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

o.   Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

p.   In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

q.   Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification

6

numbers; groups and networks of which the user is a member, including the groups'
Facebook group identification numbers; future and past event postings; rejected
"Friend" requests; comments; gifts; pokes; tags; and information about the user's
access and use of Facebook applications.

        r.     Facebook also retains Internet Protocol ("IP") logs for a given user
ID or IP address. These logs may contain information about the actions taken by the
user ID or IP address on Facebook, including information about the type of action,
the date and time of the action, and the user ID and IP address associated with the
action. For example, if a user views a Facebook profile, that user's IP log would reflect
the fact that the user viewed the profile, and would show when and from what IP
address the user did so.

        s.     Facebook keeps records that can reveal accounts accessed from
the same electronic device, such as the same computer or mobile phone, including
accounts that are linked by "cookies," which are small pieces of text sent to the user's
Internet browser when visiting websites.

        t.     Social networking providers like Facebook typically retain
additional information about their users' accounts, such as information about the
length of service (including start date), the types of service utilized, and the means
and source of any payments associated with the service (including any credit card or
bank account number). In some cases, Facebook users may communicate directly with
Facebook about issues relating to their account, such as technical problems, billing

inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

      6.     Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and account application. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Facebook, to protect the rights of the subject of the investigation and to effectively pursue this investigation, authority is sought to allow Facebook to make a digital copy of the entire contents of the information subject to seizure specified in Section II of Attachment A. That copy will be provided to me or to any authorized federal agent. The contents will then be analyzed to identify records and information subject to seizure pursuant to Section III of Attachment A.

## II.  FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

7.      In July of 2018, the **Subject Account** was used to arrange the sale of a firearm to an ATF confidential informant (CS-1")[1] from ALBERT TREVISO, a felon, as well as ANTHONY BARRERA.

8.      From on or about July 18, 2018 through July 19, 2018, CS-1 exchanged a series of Facebook messages with the user of the **Subject Account** ("SA"). Those messages included the following:[2]

```
CS-1:  Aye king you know anyone trying get rid of some poles??
SA:    Yo got a pistol
SA:    I got a 25 [.25 caliber firearm]
CS-1:  Yeah how much im in the basement king
SA:    I paid I 150 but had put new parts cost me 75
CS-1:  So what 200? [$200]
```

---

[1] CS-1 has prior convictions for robbery, burglary, and a narcotics offense. CS-1 admitted to possessing and owning a firearm that law enforcement officers had previously recovered and admitted to discharging the firearm. CS-1 is cooperating with ATF in the hope of receiving consideration for his possible state firearms offenses. Additionally, CS-1 has been paid approximately $600 for cooperating in the instant investigation. In total, CS-1 has been paid approximately $650 by the ATF for his/her cooperation with the ATF. CS-1's information has proven reliable and credible, and has been corroborated by controlled purchases/meetings and physical surveillance conducted by law enforcement officers.

[2] The investigation included the use of consensually recorded Facebook Message exchanges and meetings. The summaries of recorded conversations in this affidavit do not include reference to all of the topics covered during the conversations. Further, quoted material from the recorded conversations as set out in this affidavit is taken from draft summaries, not final transcripts. In addition, the summaries do not include references to all statements made by the speakers on the topics that are described by the speakers. In certain of the paragraphs describing calls set forth below, interpretations of the discussion are included in brackets. These interpretations include meanings attributed to code words, coded language, or vague references used by the speakers. My understanding and interpretation of the conversations is based upon the contents of the conversations, information provided by ATF sources of information, the context of both prior and subsequent intercepted conversations, my knowledge derived from this investigation, and my experience and familiarity, and the experience and familiarity of other law enforcement agents, with firearms offenses.

CS-1: It go shells [ammunition]
SA: 2 shells
CS-1: Ight its chrom I got you king fuck it. Plus you go that new piece
SA: 2524 live oak dr
SA: U want it for sure some other dude trying pay 325 forbit
CS-1: I got chu king. The money here
SA: Bet so 300
CS-1: Yeah if you hold it for me king 300

9. On July 19, 2018, law enforcement officers met CS-1 at a pre-determined staging location. CS-1 was searched for contraband, with negative results. CS-1 was equipped with recording devices, which were activated. CS-1 was also given $300 in pre-recorded ATF buy funds. CS-1 left the staging area in a vehicle driven by an undercover agent while under surveillance.

10. CS-1 and the undercover agent drove to a residence at 2524 Live Oak Drive in Crest Hill, Illinois, the same address provided in the Facebook message. Once there, CS-1 left the undercover agent in the vehicle and entered the residence.

11. As captured by CS-1's recording devices and reported by CS-1, ALBERTO TREVISO, also known as "Pelon,"[3] was standing on the front porch of the residence. ANTHONY BARRERA[4] exited the residence and joined them on the porch. TREVISO then told CS-1 that "we got to pat you down." BARRERA added, "We ain't

---

[3] TREVISO was identified by a law enforcement officer who compared the recording of the person on the porch with a known photograph of TREVISO, and concluded they are the same person.

[4] BARRERA was identified by a law enforcement officer who compared the recording of the person exiting the residence with a known photograph of BARRERA, and concluded they are the same person.

tryin to catch a gun case, you feel me?" When CS-1 refused being patted down, BARRERA directed CS-1 to enter the house. All three people went inside.

12.     As captured by CS-1's recording devices and reported by CS-1, inside the house, CS-1 gave TREVISO the $300 in ATF buy funds in exchange for the firearm. According to CS-1, CS-1 separated $100 of that $300 specifically for TREVISO. TREVISO then counted the $300.

13.     After receiving the money, as captured by the recording devices and as reported by CS-1, TREVISO said, "It's got two shells in that motha fucker right now [the firearm was loaded with two shells]." TREVISO removed a handgun from a kitchen drawer and handed it to CS-1. BARRERA said, "We got bullet holes in that door. We were blowing that bitch [the firearm]." BARRERA took the handgun from CS-1 and said, "Hey look, brand new, brand new mother fucking spring all that. Fire pin everything new." TREVISO said, "That's a good gun nigga." CS-1 also said, "I can see that shit King. Hey, appreciate it brother. You know what I'm saying. I'm trying to grab as many [firearms] as I can bro."

14.     As captured by the recording devices and according to CS-1, CS-1 left the residence with the firearm, rejoined the undercover agent, and drove under surveillance to meet law enforcement officers at a pre-determined staging location. The recording devices were recovered from CS-1, along with a Raven Arms, P25, .25 caliber semiautomatic handgun bearing serial number 041557. CS-1 was searched for contraband, with negative results.

15.     According to law enforcement database records, on or about January 5, 2005, Treviso was convicted in the Circuit Court of Will County, Illinois of felony residential burglary and sentenced to four years imprisonment.

16.     The URL for the **Subject Account**'s web address includes the name "albertopelon.treviso."

17.     Based on my training and experience in other investigations, I believe that a search of social network provider account contents often of individuals engaged in criminal conduct yields investigative leads relating to:

        a.      the identities of participants engaged in and witnesses to firearm offenses;

        b.      the contact information of participants engaged in and witnesses to firearm offenses;

        c.      the timing of communications among participants and other individuals involved in firearm offenses; and

        d.      information regarding the physical location of participants engaged in and witnesses to firearm offenses.

## III.    SEARCH PROCEDURE

18.     In order to facilitate seizure by law enforcement of the records and information described in Attachment A, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to permit employees of Facebook to assist agents in the execution of

this warrant. In executing this warrant, the following procedures will be implemented:

        a.    The search warrant will be presented to Facebook personnel who will be directed to the information described in Section II of Attachment A;

        b.    In order to minimize any disruption of computer service to innocent third parties, Facebook employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II of Attachment A, including an exact duplicate of all information stored in the computer accounts and files described therein;

19.    Facebook employees will provide the exact duplicate in electronic form of the information described in Section II of the Attachment A and all information stored in those accounts and files to the agent who serves this search warrant; and

20.    Following the protocol set out in the Addendum to Attachment A, law enforcement personnel will thereafter review all information and records received from Facebook employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A.

## IV.   CONCLUSION

21.    Based on the above information, I respectfully submit that there is probable cause to believe that evidence of violations of Title 18, United States Code, Section 922(g)(1) are located within one or more computers and/or servers found at Facebook, headquartered at 1601 S. California Avenue, Palo Alto, California 94304.

By this affidavit and application, I request that the Court issue a search warrant directed to Facebook allowing agents to seize the electronic evidence and other information stored on the Facebook servers following the search procedure described in Attachment A and the Addendum to Attachment A.

FURTHER AFFIANT SAYETH NOT.

Patrice Register
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn
before me this 28th day of September, 2018

Honorable MARIA VALDEZ
United States Magistrate Judge

14

# ATTACHMENT A

## I. SEARCH PROCEDURE

1.    The search warrant will be presented to Facebook personnel, who will be directed to isolate those accounts and files described in Section II below.

2.    In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

3.    Facebook employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant.

4.    Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

## II. FILES AND ACCOUNTS TO BE COPIED BY EMPLOYEES OF FACEBOOK

To the extent that the information described below in Section III is within the possession, custody, or control of Facebook, headquartered at 1601 S. California Avenue Palo Alto, CA 94304, Facebook is required to disclose the following information to the government for the following user ID:

**100025555491352**

a.    All contact information for 100025555491352: including full name, user identification number, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b.    All Photoprints, including all photos uploaded by that user ID, all Exchangeable Image File (or EXIF) data associated with those photos, including date, time, type of device, and geolocation information, and all photos uploaded by any user that have that user tagged in them.

c.    All Neoprints, including profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

d.    All other communications and messages made or received by the user, including all private messages and pending "Friend" requests;

e.    All IP logs, including all records of the IP addresses that logged into the account.

f.    All information about the user's access and use of Facebook Marketplace.

2

      g.     The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number).

      h.     All privacy settings and other account settings.

      i.     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

      j.     All Facebook accounts associated with the user ID: 100025555491352, by cookies, recovery email address, or telephone number.

      k.     Pursuant to 18 U.S.C. § 2703(d), the service provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## III.   Information to be Seized by Law Enforcement Personnel

All information described above in Section II that constitutes evidence concerning violations of Title 18, United States Code, Section 922(g)(1), as follows:

1.     Items related to the identity of the user or users of the **Subject Account**.

2.     Items related to the physical location of the users of the **Subject Account** at or near the times of the **Subject Offenses**.

3.     Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

3

4.      Photographs or videos that depict firearm offenses; and

5.      Items related to other Facebook accounts used by the user(s) of the **Subject Account,** including IP login information and cookies information.

4

## ADDENDUM TO ATTACHMENT A

With respect to the search of any information and records received from the social network provider, law enforcement personnel will locate the information to be seized pursuant to Section III of Attachment A according to the following protocol.

The search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a.    searching for and attempting to recover any hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein.

b.    surveying various file directories and the electronic mail, including attachments thereto to determine whether they include data falling within the list of items to be seized as set forth herein.

c.    opening or reading portions of electronic mail, and attachments thereto, in order to determine whether their contents fall within the items to be seized as set forth herein, and/or

d.    performing key word searches through all electronic mail and attachments thereto, to determine whether occurrences of language contained in such electronic mail, and attachments thereto, exist that are likely to appear in the information to be seized described in Section III of Attachment A.

5

Law enforcement personnel are not authorized to conduct additional searches on any information beyond the scope of the items to be seized by this warrant.

6

AO 93 (Rev. 11/13) Search and Seizure Warrant

AUSA Jordan M. Matthews, (312) 697-4090

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:

The Facebook account 100025555491352, further
described in Attachment A

Case Number:

# 18M602

## SEARCH AND SEIZURE WARRANT

To: Patrice Register and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of California:

### See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### See Attachment A, Part III

**YOU ARE HEREBY COMMANDED** to execute this warrant on or before <u>October 9, 2018</u> in the daytime (6:00 a.m. to 10:00 p.m.).

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate Judge.

Date and time issued: <u>September 28, 2018</u> 11:00

_____
*Judge's signature*

City and State: <u>Chicago, Illinois</u>

<u>MARIA VALDEZ, U.S. Magistrate Judge</u>
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No: | Date and Time Warrant Executed: | Copy of Warrant and Inventory Left With: |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

**I.    SEARCH PROCEDURE**

1.    The search warrant will be presented to Facebook personnel, who will be directed to isolate those accounts and files described in Section II below.

2.    In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

3.    Facebook employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant.

4.    Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

**II.    FILES AND ACCOUNTS TO BE COPIED BY EMPLOYEES OF FACEBOOK**

To the extent that the information described below in Section III is within the possession, custody, or control of Facebook, headquartered at 1601 S. California Avenue Palo Alto, CA 94304, Facebook is required to disclose the following information to the government for the following user ID:

**100025555491352**

a. All contact information for 100025555491352: including full name, user identification number, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b. All Photoprints, including all photos uploaded by that user ID, all Exchangeable Image File (or EXIF) data associated with those photos, including date, time, type of device, and geolocation information, and all photos uploaded by any user that have that user tagged in them.

c. All Neoprints, including profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

d. All other communications and messages made or received by the user, including all private messages and pending "Friend" requests;

e. All IP logs, including all records of the IP addresses that logged into the account.

f. All information about the user's access and use of Facebook Marketplace.

2

g.     The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number).

h.     All privacy settings and other account settings.

i.     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

j.     All Facebook accounts associated with the user ID: 100025555491352, by cookies, recovery email address, or telephone number.

k.     Pursuant to 18 U.S.C. § 2703(d), the service provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## III.  Information to be Seized by Law Enforcement Personnel

All information described above in Section II that constitutes evidence concerning violations of Title 18, United States Code, Section 922(g)(1), as follows:

1.     Items related to the identity of the user or users of the **Subject Account**.

2.     Items related to the physical location of the users of the **Subject Account** at or near the times of the **Subject Offenses**.

3.     Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

3

4.    Photographs or videos that depict firearm offenses; and

5.    Items related to other Facebook accounts used by the user(s) of the **Subject Account,** including IP login information and cookies information.

4

# ADDENDUM TO ATTACHMENT A

With respect to the search of any information and records received from the social network provider, law enforcement personnel will locate the information to be seized pursuant to Section III of Attachment A according to the following protocol.

The search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

      a.    searching for and attempting to recover any hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein.

      b.    surveying various file directories and the electronic mail, including attachments thereto to determine whether they include data falling within the list of items to be seized as set forth herein.

      c.    opening or reading portions of electronic mail, and attachments thereto, in order to determine whether their contents fall within the items to be seized as set forth herein, and/or

      d.    performing key word searches through all electronic mail and attachments thereto, to determine whether occurrences of language contained in such electronic mail, and attachments thereto, exist that are likely to appear in the information to be seized described in Section III of Attachment A.

5

Law enforcement personnel are not authorized to conduct additional searches on any information beyond the scope of the items to be seized by this warrant.